...

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert Marlyn Taylor, | Civil No. 05-294 (JRT/FLN) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| State of Minnesota, | |
| Respondent. | |

_____

*Pro Se* Petitioner.
J. Michael Richardson, Assistant Hennepin County Attorney, for Respondent.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [#1]. This Court issued an Order directing the Respondent to show cause why Petitioner's Writ should not be granted. [#4]. Respondent filed a response in opposition to Plaintiff's amended petition [#19].[1] The matter was referred to the undesigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, this Court recommends Petitioner's petition be denied and dismissed with prejudice.

## I. BACKGROUND

Petitioner Robert Marlyn Taylor, a prisoner of the State of Minnesota, is currently incarcerated at the Minnesota Correctional Facility in Rush City ("MCF - Rush City"). Petitioner is serving a life sentence imposed by a Minnesota state district court after a jury found him guilty

---

[1] This Court granted Petitioner's Motion to Amend the Petition on August 22, 2005. See [#23].

of first-degree premeditated murder.

### A.    Facts of the Underlying Conviction

Petitioner was convicted of murdering John Turner. <u>See</u> <u>State v. Taylor</u>, 650 N.W.2d 190, 196-98.  Turner owned and rented a house to Petitioner's estranged wife and children.  Petitioner sometimes lived with his wife and did occasional odd jobs for Turner.

After Turner failed to meet a friend for breakfast on the morning of December 25, 1999, Turner's wife and daughter went to his house.  They found his front door unlocked, several lights on, and the kitchen faucet running.  They found Turner in a pool of blood, in the same clothes he had worn the previous evening.  His wallet was missing.  Police noted signs of a struggle and found a metal die stamp, weighing approximately five pounds, near the body.  A medical examiner ("ME") concluded that Turner received eight blows to the head and face, that blunt force trauma caused his death, and that the die stamp could have been the murder weapon.  The ME estimated the time of death at between 7:30 p.m. on December 24, and 7:30 a.m. on December 25.

At trial, Petitioner's sisters Edith Taylor and Brenda Adams testified that Petitioner had been drinking the afternoon and evening of December 24.  Taylor testified that sometime close to midnight on December 24, 1999, she arrived home to find Petitioner sleeping.  Petitioner awoke and argued with Taylor.  Taylor called 911 at approximately 12:50 a.m.  The recording of the 911 call was played for the jury.  During the call, Taylor told the operator that Petitioner was drunk, that he had hit her and that she wanted him out of her house.  Police were dispatched to Taylor's home and Petitioner left after some protest.

After discovering Turner's body, police canvassed the neighborhood and spoke with Petitioner at his wife's home.  Petitioner told police that he went to Turner's house at about 2:30

a.m. on December 25, that he tried unsuccessfully to call his wife, and that he left after speaking with Turner for approximately ten minutes. In a second interview, Taylor said that he went to his wife's house at approximately 2 a.m. but could not unlock the door. Seeing lights on at Turner's house, he asked Turner to give him a key to his wife's house, but Turner refused because of recent marital problems between Petitioner and his wife. Petitioner said that he went from Turner's house to the home of his friend Marion Anderson.

Anderson told police that Petitioner had arrived at his house between 5 a.m. and 6 a.m., appeared somewhat intoxicated, and wore a black leather jacket and bib overalls over blue jeans.

The police later found a leather jacket and bib overalls at Petitioner's wife's home. The clothing contained bloodstains. According to experts at the trial, the stains were the result of "impact spatter," and matched Turner's DNA profile. They stated that the DNA profile would not occur more than once among unrelated individuals in the world.

During their investigation of the crime scene, police collected a cigarette butt from Turner's kitchen sink. Turner's daughter testified that she cleaned the sink the evening of December 24, and that nothing was in the sink after she cleaned. Petitioner told police that he had smoked a cigarette while at Turner's house and may have run water over it and put it in the garbage. DNA on the recovered cigarette, however, matched neither Petitioner nor Turner.

### B. Procedural History

A grand jury returned an indictment charging Petitioner with three counts of homicide. Petitioner's first trial ended in a mistrial. During jury selection for Petitioner's second trial, the state exercised a peremptory strike of one potential juror. The defense challenged the strike, pursuant to

Batson v. Kentucky, 476 U.S. 79 (1986), arguing that the strike constituted purposeful racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. The district court denied Petitioner's challenge and the jury found Petitioner guilty of premeditated first-degree murder.

Petitioner filed a direct appeal to the Minnesota Supreme Court, alleging that: (1) the grand jury indictment should have been dismissed because of prosecutorial misconduct; (2) the State's peremptory strike of the juror violated Batson; (3) evidence was improperly admitted; and (4) that the evidence was insufficient to support a conviction. The Supreme Court affirmed. State v. Taylor, 650 N.W.2d at 190.

Petitioner then filed for post-conviction relief, raising the same Batson issue previously decided on direct appeal. The Minnesota Supreme Court affirmed the district court's denial of post-conviction relief. Taylor v. State, 691 N.W.2d 78 (Minn. 2005).

Petitioner subsequently filed a petition for federal writ of habeas corpus with this Court, alleging a discovery violation, ineffective assistance of trial counsel, judicial misconduct, prosecutorial misconduct during the grand jury proceeding, and insufficiency of the evidence. Petitioner acknowledged that the judicial misconduct issues were unexhausted and by letter to the Court received July 11, 2005, Petitioner requested that the claims of judicial misconduct, ineffective assistance of counsel, and a discovery violation be dismissed. See [#14]. Petitioner filed an amended petition [#14], in which he alleges that 1) that the grand jury indictment should have been dismissed; 2) the State's peremptory challenge violated Batson, and 3) that the evidence was insufficient to support a conviction. For the reasons discussed below, the Court concludes that Petitioner is not entitled to a writ of habeas corpus on any of his claims for relief.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus claims raised by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court held that:

> A state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours....
>
> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 405, 413. The Court further explained the "unreasonable application" clause:

> A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather,

that application must also be unreasonable.

Id. 529 U.S. at 409, 411.

A writ of habeas corpus may also be available where the state courts' resolution of a case is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the state court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record. When reviewing a state court decision, however, a "federal court...presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

### III. DISCUSSION

**A. The Grand Jury Proceedings Did Not Violate Petitioner's Federal Constitutional Rights**

Petitioner argues that the grand jury indictment was "illegally obtained" because the grand jurors were "given a lengthy closing argument to convince them to support an indictment with no evidence to support felony murder." See Petition p. 5. Generally, an allegation that a conviction was unlawfully obtained because of errors in the grand proceeding is not cognizable under habeas review. The United States Supreme Court has held that a claim as to the validity of a state indictment, as opposed to the fairness of a trial, does not typically rise to the level of a constitutional

deprivation because any such claim alleging error in a state grand jury proceeding is rendered harmless by the subsequent guilty verdict by a petit jury. See United States v Mechanik, 475 U.S. 66, 72-73 (1986); Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).

Mechanik involved a violation, discovered only at trial, of Federal Rule of Criminal Procedure 6(d), involving the tandem testimony of two government agents before the grand jury. The Court held that the presence of unauthorized persons before the grand jury did not justify relief after the petit jury had returned its verdict.

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

475 U.S. at 70 (footnote omitted).

The reasoning of Mechanik applies here. If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court. Therefore, the petit jury's eventual conviction of Petitioner renders harmless his claims that the indictment was wrongly issued because of prosecutorial misconduct during the grand jury proceeding.

Petitioner's claims of grand jury impropriety are incognizable on habeas review. Moreover, the Court finds that the Minnesota Supreme Court properly affirmed the state district court's denial of Petitioner's motion to dismiss the indictment. On direct appeal, Petitioner argued that the district court erred by denying his motion to dismiss the indictment. In United States v. Bank of Nova Scotia, 487 U.S. 250, 256 (1988), the Supreme Court held that violations of Rule 6 of the Rules of Criminal Procedure are subject to harmless error analysis. Thus, under federal law, when a court

is asked to dismiss an indictment based on procedural or technical grounds in the grand jury proceeding, dismissal is warranted only if it is shown that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of the alleged procedural or technical violation. Id. The Court held that the district court "had no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such conduct. Id. at 263.

Here, Petitioner argued that the prosecutor committed misconduct during the state grand jury proceedings because he improperly asked the grand jury to indict on a lesser-included offense; made inappropriate comments to the grand jurors; improperly instructed the jurors that they had not heard all of the available evidence; and prejudiced the grand jury by presenting evidence of prior bad acts. See State v. Taylor, 650 N.W.2d at 199-200. After a thorough review of the grand jury transcript, the Minnesota Supreme Court held that there was no intentional conduct aimed at subverting the independence of the grand jury; that the prosecutor repeatedly reminded the grand jurors of their independence in deciding if and how to indict based on the evidence presented to them; and that evidence of past violence between Petitioner and his wife was relevant. Id. The court held that the district court properly denied Petitioner's motion to dismiss the indictment because of prosecutorial misconduct.

The Minnesota Supreme Court found no evidence of prosecutorial misconduct, let alone evidence of prejudice or substantial influence to suggest the decision to indict was unduly tainted. Therefore the court properly affirmed the denial of Petitioner's motion to dismiss the indictment under Bank of Nova Scotia, 487 U.S. at 256. There is nothing to suggest that the state courts' decisions were contrary to or involved an unreasonable application of clearly established law.

Petitioner's claim that his conviction was unlawfully obtained because of errors in the grand jury proceeding should be denied.

### B. The Minnesota Courts Properly Applied Batson

Petitioner claims that he was denied his right to a fair trial because the prosecution struck a member of his peer group from the jury in violation of Batson, 476 U.S. 79. He argues that the prosecution's reasons for striking Ms. Hartman, a minority juror (juror #25), were pretextual. See Petition p. 5.

The use of peremptory challenges to exclude persons from a jury solely on the basis of race is prohibited by the Equal Protection Clause. Batson, 476 U.S. at 89. The Supreme Court has adopted a three-part test to determine whether a peremptory strike violates Batson and the Equal Protection Clause. U.S. Xpress Enter., Inc. v. J.B. Hunt Transp., Inc., 320 F.3d 809, 812 (8th Cir. 2003). The party challenging a peremptory challenge must first make a prima facie showing of racial discrimination. United States v. Campbell, 270 F.3d 702, 705 (8th Cir. 2001) (citing Purkett v. Elem, 514 U.S. 765, 767 (1995)). Once this showing is made, the burden shifts to the State to provide a neutral explanation for challenging minority jurors. Batson, 476 U.S. at 97. The defendant then has the opportunity to argue that the prosecutor's facially-neutral explanations were merely a pretext for discrimination. Jones v. Jones, 938 F.2d 838, 844 (8th Cir. 1991). That is, the defendant must establish purposeful discrimination. Batson, 476 U.S. at 98; Weaver v. Bowersox, 241 F.3d 1024, 1028 n. 1 (8th Cir. 2001). Each step of the inquiry involves a factual determination entitled to a presumption of correctness unless overcome by clear and convincing evidence. Weaver, 241 F.3d at 1030; see also 28 U.S.C. § 2254(e)(1).

The trial court denied Petitioner's Batson challenge regarding Hartman. The district court

found that Petitioner established a prima facie case of purposeful discrimination because Ms. Hartman was part African-American and because she was the first minority juror questioned. See State v. Taylor, 650 N.W.2d at 201.

The state then offered a number of race-neutral reasons for the peremptory strike based on information from the juror's questionnaire and voir dire testimony. The district court ruled that the state had provided several race-neutral reasons for striking Ms. Hartman, including her age, her attitude toward police evidence tampering, her lack of faith in DNA evidence, the fact that her uncle was violently killed, and her ex-boyfriends in prison. However, the trial court ruled that two of the reasons proffered by the state – hospitalization and medication for depression and indifference toward police – were not race-neutral on the record. Id.

In step three of the Batson inquiry, the trial court determined that Petitioner had not met his burden of proving purposeful discrimination and denied the Batson challenge. Id.

On direct appeal, the Minnesota Supreme Court affirmed the district court's finding that Petitioner made a prima facie case of purposeful discrimination. The court held, however, that the district court failed to follow the proper procedure at step two of the Batson analysis because the court analyzed whether the reasons were credible in light of the record instead of whether the reasons were race-neutral on their face. The court went on to find that all the state's proffered reasons, including Ms. Hartman's depression and her indifference toward police, were race-neutral. Id. at 202. The court concluded that Petitioner had failed to establish purposeful discrimination and thereby affirmed the district court's determination that Petitioner failed to establish a Batson violation. Id. at 203.

Whether the prosecutor's stated reasons for striking Ms. Hartman were pretextual is a

question of fact. In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are "not fairly supported by the record." Purkett, 514 U.S. at 769 (citing 28 U.S.C. § 2254(d)(8)); see also Weaver, 241 F.3d at 1031 (noting that factual findings made by state appellate courts are entitled to the same presumption of correctness as findings of state trial courts). Moreover, the Eighth Circuit has stated that deference to trial court fact-finding is "doubly great" when considering Batson challenges because of the unique awareness of the totality of the circumstances surrounding voir dire. Weaver, 241 F.3d at 1030 (quotation omitted).

Petitioner's allegation of discrimination falls short of rebutting the trial court's presumptive correctness when it concluded that the prosecutor did not violate Batson. Even in his habeas petition, Petitioner offers no evidence of pretext or purposeful discrimination. See Petitioner's Mem. [#24] pp. 10-12. In light of the numerous non-discriminatory reasons for striking the juror the state presented, the Court is unable to conclude that the state courts' factual findings were incorrect. Petitioner is not entitled to habeas relief on his Batson claim.

### C. Petitioner's Conviction Is Supported by Substantial Evidence

Petitioner contends that there was insufficient evidence to support his conviction for first-degree, premeditated murder. He argues that the cigarette butt found at the scene of the crime "point[ed] elsewhere," and that there was no evidence to support a finding of premeditation. See Petition p. 6.

In considering a sufficiency of the evidence claim within the context of section 2254, federal courts must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) ("[U]nder 28 U.S.C. § 2254 ... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt") (citation omitted). Under this standard, the Court does not re-weigh the evidence to see whether the evidence could have resulted in acquittal. Rather, the issue is whether any rational trier of fact could have found the defendant guilty based on the evidence presented at trial. If conflicting inferences could be drawn from the evidence, then the Court must assume that the trier of fact resolved those conflicts in favor of the prosecution, and the Court must "defer to that resolution." Id. at 326.

Each of the elements of the crime charged may be proven by circumstantial evidence. Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996). We presume the findings of fact made by the state courts are correct unless Petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003). Finally, the Court must keep in mind that the standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly. Hill, 96 F.3d at 1088.

The Minnesota Supreme Court analyzed Petitioner's claim regarding the sufficiency of the evidence on Petitioner's direct appeal. The court limited its review to "determining whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to allow the jurors to reach the verdict they did." State v. Taylor, 650 N.W.2d at 206 (citing State v. Webb, 440 N.W.2d 426, 430 (Minn. 1989)).

The evidence, viewed in the light most favorable to the verdict, demonstrates the following: On December 24, 1999, Petitioner, who had been drinking, got into an altercation with his sister at her home; his sister called the police and the officers ordered him to leave her home; Petitioner went

to his father's home, but was refused admittance; Petitioner then attempted to enter his estranged wife's apartment but could not because the door was locked; at approximately 2:30 a.m. on December 25, Petitioner went to Turner's residence to obtain a key to his wife's home, but Turner refused to provide the key; Petitioner was killed sometime between 7:30 p.m on December 24, and 7:30 a.m. on December 25, 1999; Turner died as a result of eight blows to the head with a heavy object; blood spatter was found on the clothing Petitioner wore on December 24 and 25; the DNA from the blood on Petitioner's clothing matched Turner's DNA.

Viewing the evidence in the light most favorable to the verdict, the jury reasonably inferred that Petitioner killed Turner with premeditation and intent. See State v. Taylor, 650 N.W.2d at 207 (reasoning that the number of blows shows that the act was intentional, and the use of a heavy object on the victim's head shows that the assailant intended to kill). The fact that a cigarette butt, without Petitioner's or Turner's DNA, was found in Turner's sink is not enough to negate the jury's finding of guilt. See State v. Ostrem, 535 N.W.2d 916, 923 (Minn. 1995) (possibilities of innocence do not require reversal of a jury verdict if the evidence taken as a whole makes such theories seem unreasonable). The Minnesota Supreme Court reasonably determined that the evidence was sufficient to support Petitioner's conviction for first-degree murder. Based on the evidence, and applying the Jackson v. Virginia standard, we are satisfied that the Minnesota courts' resolution of this issue was not an unreasonable application of clearly established federal law. Petitioner is not entitled to federal habeas relief on his claim of insufficient evidence.

## IV. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [#1; #14] be **DENIED,** and that this action be **DISMISSED WITH PREJUDICE.**


DATED: March 29, 2006				s/ *Franklin L. Noel*
							FRANKLIN L. NOEL
							United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **April 17, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.