## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

ROBERT MARLYN TAYLOR,                    Civil No. 05-294 (JRT/FLN)

                                    Petitioner,

v.                                              **ORDER ADOPTING REPORT AND**
                                                **RECOMMENDATION**

STATE OF MINNESOTA,

                                    Respondent.

---

Robert Marlyn Taylor, # 206397, MCF - Rush City, 7600 525th Street, Rush City, MN  55069, petitioner pro se.

Thomas R. Ragatz, OFFICE OF THE MINNESOTA ATTORNEY GENERAL, 445 Minnesota Street, Suite 1800, Saint Paul, MN  55101, for respondent.

Petitioner Robert Marlyn Taylor ("Taylor"), a prisoner incarcerated at the Minnesota Correctional Facility in Rush City, Minnesota, brings this petition for writ of habeas corpus (the "petition") pursuant to 28 U.S.C. § 2254.   In a Report and Recommendation dated March 8, 2006, United States Magistrate Judge Franklin L. Noel recommended denying Taylor's petition.   Currently before the Court is petitioner's objection to the Magistrate Judge's Report and Recommendation.   The Court has conducted a de novo review of petitioner's objections pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b).   For the reasons set forth below, the Court overrules petitioner's objection and adopts the Report and Recommendation of the Magistrate Judge.

## BACKGROUND

On January 26, 2001, petitioner was convicted of first-degree premeditated murder for the killing of John Turner ("Turner"), and was sentenced by a Minnesota District Court judge to a sentence of life imprisonment. *See State v. Taylor*, 650 N.W.2d 190, 196-98 (Minn. 2002).

Turner ran an antique business from his home in south Minneapolis, which was filled with antiques and collectibles, including antique tools. Turner also owned the house next door, which he rented to petitioner's estranged wife and children. Petitioner sometimes lived with his wife and did occasional odd jobs for Turner. On the evening of December 25, 1999, when Turner failed to arrive at his wife's house for Christmas dinner, Turner's wife and daughter went to his house. When they arrived, Turner's front door was unlocked, several lights were on, and the kitchen faucet was running. Turner's wife and daughter found Turner in a pool of blood, in the same clothes he had worn the previous evening, and his wallet was missing. Police later noted signs of a struggle and found a metal die stamp, weighing approximately five pounds, near the body. A medical examiner concluded that Turner received eight blows to the head and face, that blunt force trauma caused his death, and that the die stamp could have been the murder weapon. The medical examiner estimated the time of death at between 7:30 p.m. on December 24, and 7:30 a.m. on December 25.

At trial, petitioner's sisters Edith Taylor and Brenda Adams testified that petitioner had been drinking during the afternoon and evening of December 24. Edith Taylor testified that sometime close to midnight on December 24, she arrived home to find

petitioner sleeping.  Petitioner awoke and argued with Edith Taylor, and she called 911 at approximately 12:50 a.m.  The recording of the 911 call was played for the jury.  During the call, Edith Taylor told the operator that petitioner was drunk, that he had hit her, and that she wanted him out of her house.  Police were dispatched to Edith Taylor's home and petitioner left after some protest.

After discovering Turner's body, police canvassed the neighborhood and spoke with petitioner at his wife's home.  Petitioner told police that he went to Turner's house at about 2:30 a.m. on December 25, that he tried unsuccessfully to call his wife, and that he left after speaking with Turner for approximately ten minutes.  In a second interview, petitioner said that he went to his wife's house at approximately 2 a.m. but could not unlock the door.  Seeing lights on at Turner's house, he asked Turner to give him a key to his wife's house, but Turner refused because of recent marital problems between petitioner and his wife.  Petitioner also told police that he went from Turner's house to the home of his friend Marion Anderson.

Marion Anderson told police that petitioner had arrived at his house between 5 a.m. and 6 a.m., appeared somewhat intoxicated, and wore a black leather jacket and bib overalls over blue jeans.  Police later found a leather jacket and bib overalls at petitioner's wife's home.  The clothing contained bloodstains.  According to experts who testified at trial, the stains were the result of "impact spatter," and matched Turner's DNA profile.

During their investigation of the crime scene, police collected a cigarette butt from Turner's kitchen sink.  Turner's daughter testified that she cleaned the sink the evening of

December 24, and that nothing was in the sink after she cleaned.  Petitioner told police that he had smoked a cigarette while at Turner's house and may have run water over it and put it in the garbage.  DNA on the recovered cigarette, however, matched neither petitioner nor Turner.

A grand jury returned an indictment charging appellant with three counts of homicide: first-degree premeditated murder, first-degree felony-murder, and second-degree intentional murder.  Petitioner moved to dismiss the indictment, arguing that prosecutors improperly discussed trial strategy with grand jurors, made improper summations, gave improper instructions, offered evidence of prior bad acts committed by appellant (allegations of violence between appellant and his wife and between appellant and his family on the night of the murder), and failed to disclose exculpatory evidence to the grand jury.  The district court denied petitioner's motion.

Petitioner's first trial ended in a mistrial.  During jury selection for petitioner's second trial, the state exercised a peremptory strike of one potential juror, "Juror # 25," and the defense made a *Batson* challenge, arguing that the strike constituted purposeful racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  The district court denied petitioner's challenge and the jury found petitioner guilty of premeditated first-degree murder.

Petitioner filed a direct appeal to the Minnesota Supreme Court, asserting that: (1) the grand jury indictment should have been dismissed because of prosecutorial misconduct; (2) the State's peremptory strike of the juror violated *Batson*; (3) evidence was improperly admitted; and (4) that the evidence was insufficient to support a

conviction.  The Minnesota Supreme Court affirmed petitioner's conviction.  *Taylor*, 650 N.W.2d at 190.

Petitioner filed for post-conviction relief in Minnesota state court, raising the same *Batson* issue previously decided on direct appeal.  The Minnesota Supreme Court affirmed the district court's denial of post-conviction relief.  *Taylor v. State*, 691 N.W.2d 78 (Minn. 2005).  Petitioner subsequently filed a petition for federal writ of habeas corpus with this Court.[1]  For the reasons discussed below, the Court concludes that petitioner is not entitled to a writ of habeas corpus on any of his claims for relief.

## ANALYSIS

### I.      Standard of Review

A writ of habeas corpus is available to "a person in custody pursuant to the judgment of a State court" if that person "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A federal court may not grant habeas corpus relief to a state prisoner on any issue that was adjudicated on the merits in state court unless the adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that

---

[1] In his initial federal habeas petition, petitioner raised the following grounds for relief: ineffective assistance of trial counsel, judicial misconduct, prosecutorial misconduct during the grand jury proceeding, insufficiency of the evidence, and a discovery violation.  *See* Docket No. 1.  Petitioner later acknowledged that certain grounds for relief had not been exhausted, and requested that his claims of judicial misconduct, ineffective assistance of counsel, and a discovery violation be dismissed.  *See* Docket No. 14.  Petitioner then filed an amended petition, raising the three grounds discussed herein.  *See* Attachment No. 1 to Docket No. 14.

was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d).  When a petitioner challenges his confinement under § 2254, the Court may not disregard the state court's factual determinations.  Rather, the law requires that "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  A petitioner has the burden of rebutting this presumption by clear and convincing evidence. *Id.*; *see also Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000).

In the petition, petitioner raises three grounds for relief, alleging that:  (1) the grand jury indictment should have been dismissed; (2) the State's peremptory challenge to Juror # 25 violated *Batson*, and (3) the evidence was insufficient to support a conviction.

## II.    Grand Jury Indictment

The Magistrate Judge recommended dismissing petitioner's grand jury indictment claim on the grounds that petitioner's allegations did not set forth a violation of petitioner's constitutional rights.   Petitioner objects, arguing that the grand jury indictment should have been dismissed as "illegally obtained" because of prosecutorial misconduct, including allegations that the grand jurors were "given a lengthy closing argument to convince them to support an indictment with no evidence to support felony murder."  The Court disagrees.

As set forth above, the Minnesota District Court denied petitioner's motion to dismiss the indictment, and the Minnesota Supreme Court affirmed this decision. *Taylor*,

650 N.W.2d at 190.  In affirming the District Court's decision, the Minnesota Supreme Court noted that a presumption of regularity attaches to an indictment, however, "an indictment should be dismissed if the prosecutor knowingly engaged in misconduct that substantially influenced the grand jury's decision to indict and if a reviewing court gravely doubts that the decision to indict was free of any influence of the misconduct." After reviewing the grand jury transcript, the Minnesota Supreme Court determined that there was no intentional conduct aimed at subverting the independence of the grand jury, and that the prosecutor had repeatedly reminded the grand jurors of their independence in deciding if and how to indict based on the evidence presented to them.  The court also held that evidence of past violence between petitioner and his wife was relevant and was therefore properly presented to the grand jury.  *Id.*

On collateral review, to prevail on his allegations that the grand jury's indictment was "illegally obtained" and that the indictment should be dismissed, petitioner must show that the Minnesota Supreme Court's decision was based on an "unreasonable determination of the facts" in light of the evidence presented in the state courts or was "contrary to law."  28 U.S.C. § 2254(d)(2).  The Court finds that petitioner has failed this burden.  First, petitioner has offered no reason or explanation showing that the Minnesota Supreme Court made an unreasonable determination of facts regarding the prosecutor's conduct before the grand jury.

Second, petitioner has failed to show that the Minnesota Supreme Court decision was contrary to law.  Allegations of prosecutorial misconduct before the grand jury are subject to harmless error review.  *See United States v Mechanik*, 475 U.S. 66, 72-73

(1986); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).  In *Mechanik*, the United States Supreme Court held that the presence of unauthorized persons before the grand jury did not justify relief after the petit jury had returned its verdict, because the "petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." *Mechanik*, 475 U.S. at 70.  The Court reasoned that "[m]easured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.*; *see also United States v. Bank of Nova Scotia*, 487 U.S. 250, 256 (1988) (holding that violations of Rule 6 of the Federal Rules of Criminal Procedure are subject to harmless error analysis).

Here, petitioner argued that the prosecutor committed misconduct during the state grand jury proceedings because he improperly asked the grand jury to indict on a lesser-included offense, made inappropriate comments to the grand jurors, improperly instructed the jurors that they had not heard all of the available evidence, and prejudiced the grand jury by presenting evidence of prior bad acts.  *See Taylor*, 650 N.W.2d at 199-200.  Even assuming that the prosecutor did commit misconduct before the grand jury, such misconduct would be subject to harmless-error review.  Because the petit jury convicted petitioner, any prosecutorial misconduct before the grand jury was rendered harmless. There is nothing to suggest that the state courts' decisions were contrary to or involved an unreasonable application of clearly established law.  Accordingly, the Court denies petitioner's claim that his indictment should be dismissed.

### III. *Batson* Violation

Petitioner objects to the Magistrate Judge's determination that the Minnesota courts properly applied *Batson*. Petitioner asserts that he was denied his right to a fair trial because the prosecution struck a member of his peer group from the jury in violation of *Batson*, and he contends that the prosecution's reasons for striking Juror # 25 were a pretext for race discrimination.

The use of peremptory challenges to exclude persons from a jury solely on the basis of race is prohibited by the Equal Protection Clause. *Batson*, 476 U.S. at 89. The Supreme Court has adopted a three-part test to determine whether a peremptory strike violates *Batson* and the Equal Protection Clause. *U.S. Xpress Enter., Inc. v. J.B. Hunt Transp., Inc.*, 320 F.3d 809, 812 (8th Cir. 2003). The party challenging a peremptory challenge must first make a prima facie showing of racial discrimination. *United States v. Campbell*, 270 F.3d 702, 705 (8th Cir. 2001) (citing *Purkett v. Elem*, 514 U.S. 765, 767 (1995)). Once this showing is made, the burden shifts to the State to provide a neutral explanation for challenging minority jurors. *Batson*, 476 U.S. at 97. The defendant then has the opportunity to argue that the prosecutor's facially-neutral explanations were merely a pretext for discrimination. *Jones v. Jones*, 938 F.2d 838, 844 (8th Cir. 1991). That is, the defendant must establish purposeful discrimination. *Batson*, 476 U.S. at 98; *Weaver v. Bowersox*, 241 F.3d 1024, 1028 n. 1 (8th Cir. 2001). Each step of the inquiry involves a factual determination entitled to a presumption of correctness unless overcome by clear and convincing evidence. *Weaver*, 241 F.3d at 1030; *see also* 28 U.S.C. § 2254(e)(1).

Petitioner initially raised his *Batson* challenge before the trial court. The district court found that petitioner established a prima facie case of purposeful discrimination because Juror # 25 was African-American and because she was the first minority juror questioned. *See Taylor*, 650 N.W.2d at 201. The district court also found that the state had provided several race-neutral reasons for striking Juror # 25 based on information from the juror's questionnaire and voir dire testimony, including her age, her attitude toward police evidence tampering, her lack of faith in DNA evidence, the fact that her uncle was violently killed, and her ex-boyfriends in prison. However, the trial court ruled that two of the reasons proffered by the state – hospitalization and medication for depression and indifference toward police – were not race-neutral on the record. *Id.* In step three of the *Batson* inquiry, the district court determined that petitioner had not met his burden of proving purposeful discrimination and denied the *Batson* challenge. *Id.*

On direct appeal, the Minnesota Supreme Court affirmed the district court's finding that petitioner made a prima facie case of purposeful discrimination. The court held, however, that the district court failed to follow the proper procedure at step two of the *Batson* analysis because the court analyzed whether the reasons were credible in light of the record instead of whether the reasons were race-neutral on their face. The court went on to find that all the state's proffered reasons, including Juror # 25's depression and her indifference toward police, were race-neutral. *Id.* at 202. The court also concluded that petitioner had failed to establish purposeful discrimination and thereby affirmed the district court's determination that petitioner failed to establish a *Batson* violation. *Id.* at 203.

Whether the prosecutor's stated reasons for striking Juror # 25 were a pretext for race discrimination is a question of fact. In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are "not fairly supported by the record." *Purkett*, 514 U.S. at 769 (citing 28 U.S.C. § 2254(d)(8)); *see also Weaver*, 241 F.3d at 1031 (noting that factual findings made by state appellate courts are entitled to the same presumption of correctness as findings of state trial courts). Moreover, the Eighth Circuit has stated that deference to trial court fact-finding is "doubly great" when considering *Batson* challenges because of the unique awareness of the totality of the circumstances surrounding voir dire. *Weaver*, 241 F.3d at 1030 (quotation omitted).

In his habeas petition and in his objection, petitioner continues to allege that the prosecutor struck Juror # 25 on the basis of her race in violation of *Batson*, however, petitioner again fails to offer any specific facts tending to show purposeful discrimination. Petitioner's conclusory allegations of race discrimination do not, therefore, rebut the trial court's finding of fact that the prosecutor did not strike Juror # 25 on account of her race. Accordingly, petitioner is not entitled to habeas relief on his *Batson* claim.

## IV.    Insufficient Evidence

Finally, petitioner objects to the Magistrate Judge's recommendation that his conviction was supported by sufficient evidence. Petitioner contends that there was insufficient evidence to support his conviction for first-degree premeditated murder,

arguing that the cigarette butt found at the scene of the crime "point[ed] elsewhere," and that there was no evidence to support a finding of premeditation.

In considering a sufficiency of the evidence claim within the context of § 2254, federal courts must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[U]nder 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt") (citation omitted).  If conflicting inferences could be drawn from the evidence, then the Court must assume that the trier of fact resolved those conflicts in favor of the prosecution, and the Court must "defer to that resolution." *Id.* at 326.

Each of the elements of the crime charged may be proven by circumstantial evidence. *Hill v. Norris*, 96 F.3d 1085, 1088 (8th Cir. 1996).  A federal habeas court presumes the findings of fact made by the state courts are correct unless a petitioner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Hall v. Luebbers*, 341 F.3d 706, 712 (8th Cir. 2003).  Finally, the Court must keep in mind that the standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly. *Hill*, 96 F.3d at 1088.

The Minnesota Supreme Court analyzed petitioner's claim regarding the sufficiency of the evidence on petitioner's direct appeal.  The court limited its review to "determining whether the evidence, when viewed in the light most favorable to the

- 12 -

conviction, was sufficient to allow the jurors to reach the verdict they did." *Taylor*, 650 N.W.2d at 206. Under that standard, the Minnesota Supreme Court concluded that there was sufficient evidence to sustain the verdict. In reaching that conclusion, the court noted that evidence was presented at trial tending to show that petitioner had been drinking on December 24, 1999, had gotten into a physical altercation with his sister, and only left her home after she called the police. The prosecution also offered evidence showing that petitioner attempted to enter his estranged wife's apartment, but could not because the door was locked. In addition, petitioner went to Turner's residence at approximately 2:30 a.m. on December 25 to obtain a key to his wife's home, but Turner refused to provide the key. Further, the medical examiner testified that Turner was killed sometime between 7:30 p.m on December 24 and 7:30 a.m. on December 25, 1999, and that he died as a result of eight blows to the head with a heavy object. Moreover, the jury was presented with evidence that blood spatter was found on the clothing petitioner wore on December 24 and 25, and the DNA from the blood on petitioner's clothing matched Turner's DNA.

Based on this evidence, the Minnesota Supreme Court determined that the jury could reasonably infer that petitioner killed Turner with premeditation and intent. *See Taylor*, 650 N.W.2d at 207. With respect to the requisite level of intent, the court reasoned that the number of blows shows that the act was intentional, and the use of a heavy object on the victim's head shows that the assailant intended to kill. Finally, court noted that the fact that a cigarette butt, without petitioner's or Turner's DNA, was found in Turner's sink, was not enough to negate the jury's finding of guilt. *See State v.*

*Ostrem*, 535 N.W.2d 916, 923 (Minn. 1995) (possibilities of innocence do not require reversal of a jury verdict if the evidence taken as a whole makes such theories seem unreasonable).

As set forth above, the burden rests on petitioner to show that the Minnesota Supreme Court's decision was contrary to law, or that the decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The Court finds that petitioner has failed this burden. Petitioner has not offered, nor does the record disclose, any reason showing that the Minnesota Supreme Court's decision was contrary to law or based on an unreasonable interpretation of the facts. Accordingly, petitioner is not entitled to federal habeas relief on this ground.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** petitioner's objection [Docket No. 26] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 25]. Accordingly, **IT IS HEREBY ORDERED** that petitioner's Petition for Writ of Habeas Corpus [Docket Nos. 1, 14] is **DENIED.**

### LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:    September 7, 2006                    _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                           JOHN R. TUNHEIM
                                                     United States District Judge